**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| v. | § § | Criminal Action No. **3:19-CR-544-L** |
| **GABRIEL ROBERTS** | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Gabriel Roberts's Motion for Revocation of Order of Detention Pending Trial With Authorities ("Motion") (Doc. 16), filed November 6, 2019. After careful consideration of the Motion, the Government's response (Doc. 19), filed December 2, 2019, the record, and applicable law, the court **denies** Defendant's Motion for Revocation of Order of Detention Pending Trial With Authorities (Doc. 16).

**I.    Factual and Procedural Background**

Defendant Gabriel Roberts ("Defendant") was named by a cooperating defendant as a participant in the clandestine manufacturing of synthetic Oxycodone and Xanax. As a result of the investigation into the alleged counterfeit prescription medication conspiracy, agents of the Drug Enforcement Administration ("DEA") executed a search warrant at Defendant's residence because it was alleged that he owned a pill press that was used to manufacture the counterfeit medications. The pill press was not located during the search, but a blow torch, meth pipe, multiple syringes, drug paraphernalia, and several handguns were recovered from Defendant's residence. On October 17, 2019, the grand jury indicted Defendant, and he was charged with violations of 18 U.S.C. § 922(g)(3) (Prohibited Person in Possession of a Firearm) and 26 U.S.C. §§ 5845(a)(7), 5861(d), and 5871 (Possession of an Unregistered Firearm).

On October 24, 2019, Defendant was arrested in Richardson, Texas, pursuant to a warrant issued from the Northern District of Texas. Following his initial appearance before a magistrate

judge on October 25, 2019, Defendant was ordered detained pending a detention hearing. On October 30, 2019, Defendant appeared before United States Magistrate Judge Rebecca Rutherford for a detention hearing. Following the hearing, the magistrate judge, finding Defendant to be a danger to the community, ordered Defendant detained and remanded to custody pending trial.

## II.     Motion for Revocation of Order of Detention

On November 6, 2019, Defendant filed this Motion, pursuant to 18 U.S.C. § 3145(b), asking the court to revoke or set aside the magistrate judge's detention order and release him, subject to the standard conditions set forth in 18 U.S.C. §§ 3142(b) or (c) because the Government failed to present any evidence supporting his detention. In support of his Motion, Defendant contends as follows:

> 6. The narrative of the order under OTHER REASONS OR FURTHER EXPLANATION are contrary to the evidence presented. Further the narrative places a burden on the Defendant to establish a justification for release. The Defendant was further provided evidence through discovery and personal interviews that contradict the testimony provided to the court at the hearing.
>
> . . .
>
> 10. The Government presented no evidence that the Defendant is a risk of flight, based on his character, physical and mental condition, family ties, and employment. The Government presents no evidence that the Defendant will obstruct, threaten, injure, or intimidate any prospective witness or juror.

Def.'s Mot. ¶¶ 6, 10. Accordingly, Defendant requests that he have an "opportunity to present the contradicting evidence [obtained during discovery and personal interviews] at a hearing before the court." *Id.* ¶ 7 Defendant further requests that the court consider the factors outlined in 18 U.S.C. § 3142(g) because (1) his criminal history is without violence; (2) "[h]e is an American Citizen with family ties to this community"; and (3) there "was no evidence presented to believe that [he] would not comply with conditions of release or even a release on personal recognizance or an unsecured appearance bond." *Id.* ¶¶ 8, 9.

**Memorandum Opinion and Order – Page 2**

In response, the Government contends that Defendant's Motion should be denied as there "was ample evidence to support the Magistrate's finding that [Defendant's] release posed a threat to the safety of the community and that there was no condition or combination of conditions that will reasonably assure the safety of any other person and the community." Gov't Resp. 1. The Government further contends that it presented the following evidence at the hearing:

1. Roberts had inert material1 at his residence used to clandestinely manufacture pills containing a controlled substance such as Xanax or Oxycodone using a pill press just as the investigation indicated. (Hrg. Tr. at 9:19-22, 24:18-25, 25:1-20, & 35:14-19; *see also* Gov. Exs. 24 & 25.)

2. After one of his coconspirators was arrested, Roberts was warned that police may be coming to the residence to search for the pill press. (Hrg. Tr. at 9:13-18, 26:1-3, & 36:23-37:7.)

3. Roberts possessed numerous firearms, body-worn vests, and a scale that are consistent with narcotics distribution. (Hrg. Tr. at 14:2-24, 24:9-17, 34:6-25 & 35:2-13; *see also* Gov. Exs. 6, 10-18, 23 & 24.)

4. A cooperating defendant said Roberts was addicted to methamphetamine and would smoke it or inject it. (Hrg. Tr. at 10:3-7.)

5. At the location officers found a blow torch that is often used by addicts to get high more rapidly than a normal lighter and a meth pipe. (Hrg. Tr. at 9:23-10, 22:18-24, 23:18-25-24:1, *see also* Gov exs. 19 & 22.)

6. Officers also found syringes that could be used to inject methamphetamine. (Hrg. Tr. at 10:2-3, 23:1-10, *see also* gov. ex. 20.)

7. Roberts was a long time user and abuser of methamphetamine and he intravenously injected it or smoked it. (Hrg. Tr. at 10:5-7.)

8. Roberts had prior arrests for possession of marijuana and possession of controlled substance several years ago. (Hrg. Tr. at 8-14.)

9. The extremely unsanitary and unlivable conditions of the house were consistent with methamphetamine addiction. Trash was overflowing from the trash container, the sink was practically not usable because of other items piled in it, and one could not walk into the closet without stepping over numerous clothing items. Finally, the smell of animal feces was overwhelming. (Hrg. Tr. at 8:1-9, 10:8-19, 13:5-16, 15:10-17, 19:5-15, 19:24-24-20:1-4, *see also* Gov. exs. 1-4, 5, 8 & 9.)

10. The house was in such an unsafe condition that the agents called CPS due to a minor child living at the location.2 The only room that was remotely clean was the child's room. (Hrg. Tr. at 26:5-21, *see also* gov. ex. 26.)

11. Roberts was verbally combative while agents were searching and when arrested on the indictment called the agents "phone stealing mother fuckers" after agents seized his cellular phones as evidence. (Hrg. Tr. at 27:1-25, 29:6-10.)

Gov't Resp. 3-4. The Government further asserts that Defendant failed to timely present, during the October detention hearing, any live testimony or evidence in contradiction of the Government's evidence. Additionally, it asserts that without more information it cannot respond to Defendant's blanket assertion that there was contradictory evidence produced in discovery. It also notes that Defendant's counsel, at the time its response was filed, had not yet reviewed all of the discovery because he had not reviewed the documents housed at the U.S. Attorney's Office. Ultimately, according to the Government, Defendant had ample opportunity at the hearing and in his Motion to present controverting evidence but failed to do so; thus, according to the Government, Defendant's Motion should be denied.

### A. Legal Standard

"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, F.2d 243, 249 (5th Cir. 1985) (citations omitted). "Under the Bail Reform Act [the "Act"], a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required." *Fortna*, 769 F.2d at 249 (citations omitted). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of

the person as required and the safety of any other person or the community," a court must consider: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person.; (3) the history and characteristics of the person . . . ; and (4) the nature and the seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). "With respect to the quantum of character of proof, . . . the Act provides that the facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure *the safety* of any other person and the community shall be supported by clear and convincing evidence." *Fortna*, 769 F.2d at 250 (quoting § 3142(f)) (internal quotation marks omitted).

> B.  Analysis

The court, having conducted a *de novo* review of the transcript of Defendant's October 30, 2019 detention hearing, the magistrate judge's order of detention, the legal briefs of the parties, and the record, determines that the section 3142(g) factors weigh in favor of detention. With respect to the first section 3142(g) factor, the "nature and circumstances of the offense charged," Defendant is charged with Prohibited Person in Possession of a Firearm and Possession of an Unregistered Firearm. These charges stem from a search warrant executed after Defendant was named as a participant in a counterfeit prescription drug operation and was alleged to be in possession of a pill press used to make the counterfeit pills. As a result of the search warrant, law enforcement officers not only recovered 14 firearms but also found a scale, blow torch, body armor, multiple syringes, and a pipe. The DEA also recovered inert material used to bind the counterfeit drugs. DEA Agent Tim Davis ("Agent Davis") testified that the recovered items are consistent with drug trafficking and distribution. The pill press, however, was not located. Given the nature of his crime, the number of firearms recovered, and the ongoing investigation regarding

the extent of the drug conspiracy in which Defendant may be involved, the court determines that Defendant poses a threat to the community. Thus, this factor weighs in favor of detention.

With respect to the second section 3142(g) factor, "the weight of the evidence against the person," the court determines that the Government has put forth sufficient evidence to support the charges against Defendant set forth in the Indictment. The DEA recovered the listed firearms and silencer from Defendant's home, in addition to materials and tools generally used in the manufacturing and distribution of narcotics. Additionally, Agent Davis testified regarding the unsafe living conditions of the home and Defendant's history of methamphetamine addiction. Although Defendant presented two character witnesses, their testimony is unpersuasive and failed to overcome the Government's evidence in favor of detention. The court, therefore, concludes that the Government has met its burden in demonstrating the weight of the evidence against Defendant and finds that this factor also weighs in favor of his detention.

The third section 3142(g) factor, "the history and characteristics of the person," strongly supports detention. In considering this factor, a court looks to available information regarding "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Defendant notes that he is an American Citizen with family ties to the community and has no violent criminal history. While the court considers these factors, they do not negate other characteristics of the Defendant that favor detention.

Agent Davis testified that he learned that Defendant was "a long-time user and abuser of methamphetamine and that he intravenously injected methamphetamine." Hr'g Tr. 10:5-7. Additionally, he testified that, when the DEA conducted the search of Defendant's residence, the home was unlivable to a reasonable person. Specifically, he recalls the odor of "cat urine and feces

[] so strong [that] it was almost overwhelming. The house was cluttered with all types of material from trash, refuse, clothing, food items . . . and messy to the point where it was hard to walk around." *Id.* 10:11-16. According to Agent Davis, only one room was clean, which was the room of a minor child who lived in the residence. Given the unlivable conditions of the home and the drug paraphernalia and materials and firearms recovered, Agent Davis contacted Child Protective Services to inform it that the home was an unsafe environment for the child to live. Moreover, Agent Davis testified that someone informed Defendant that the DEA obtained search warrant, and, as a result, he suggested that Defendant may have gotten rid of the pill press before the warrant was executed.

The court, therefore, can conclude that if released, Defendant will continue using methamphetamine and find other means to carry out his role in the alleged conspiracy. As Magistrate Judge Rutherford noted on the record during the detention hearing, the combination of drug use and the possession of weapons in connection with such use is inherently dangerous and poses a danger to the community. The court, like the magistrate judge, finds that this factor weighs in favor of detention. For the same reasons previously discussed, the court also determines that the fourth section 3142(g) factor, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," weighs in favor of detention.

The totality of the factors considered above warrants detention of Defendant. The court finds that the Government has shown by clear and convincing evidence that Defendant poses a risk to the community. Additionally, given his alleged involvement in a counterfeit prescription drug operation, long-time addiction to methamphetamines, and possession of several firearms, his conduct is inherently dangerous and poses a threat to the community and others, including the minor child living in his residence. Defendant's assertion that the Government failed to present evidence that he would not comply or appear based on his personal recognizance is misguided, as

the law only required that the Government prove *either* the lack of reasonable assurance that he would appear, *or* that he poses a threat to others or the community, not both. *See United States v. Reuben*, 974 F.2d 580, 586 (5th Cir. 1992) (citations omitted). Moreover, the Government is not required to prove that Defendant is a flight risk or that he would "obstruct, threaten, injure or intimidate any prospective witness or juror." Def.'s Mot. 10. Despite Defendant's assertions, the court concludes that the Government presented clear and convincing evidence that his release would pose a threat to the community.

As Magistrate Judge Rutherford indicated, there is little to no evidence demonstrating what conditions or combination of such would reasonably assure the safety of the community. The court, however, determines that the inherently dangerous combination of drug use and manufacturing and possession of weapons warrants detention, as based on the evidence and testimony presented at the hearing, and no conditions or combination of conditions will reasonably assure such protections of the community or Defendant's presence at trial. Accordingly, the court **denies** Defendant's Motion and request for a second hearing regarding his detention.[*]

### III. Conclusion

For the reasons herein stated, the court **denies** Defendant's Motion for Revocation of Order of Detention Pending Trial with Authorities (Doc. 16) and Defendant's request for a new hearing.

**It is so ordered** this 3rd day of January, 2020.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge

---

[*] As set forth above, *see supra* Sec. II(A), a defendant is entitled to a *de novo* review by the court of the original detention hearing, not to an additional detention hearing. Despite Defendant's allegation that he was provided evidence in discovery that contradicts the testimony presented at the hearing, he does not cite to such evidence or include it in his briefing. Thus, the court cannot reasonably determine the veracity of his allegation. The court, therefore, determines that Defendant has not provided the court with a sufficient reason to hold a new hearing.